Filed 01/29/24

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-03111

Margie Sisco v. Ralph Wheeler et al

## ENTRY ORDER

The parties in this case have left the determination of value for the subject property in the hands of the Court to determine based on the competing appraisals offered by the parties. After careful review of the filings, the Court has determined that it does no require a site visit or a third appraiser as allowed in the parties' stipulated motion to determine the fair market value of the property located at 175 Brook Road in Morgan, Vermont.

Based on the appraisals, the Court finds as follows. 175 Brook Road is a 6086 square foot property where a single-family residence is located. The residence is 1,077 square feet in space, and it has six rooms, including two bedrooms, and a full bathroom. It was constructed in 2011 on a concrete slab. It is average construction that has been well-maintained. The property has 86 feet of frontage on Lake Seymour in Morgan, Vermont. The house is situated to have a view of the lake and easy access to the shoreline. The house has a small balcony, a covered porch, a small, attached shed, and a larger, detached shed. It sits at the end of a residential road that is several hundred feet from State highway 111, which is the main arterial road that runs around the north and east sides of Lake Seymour. There is no heating system in the house, and the wastewater system has failed, which will require the installation of a new system, which is likely to cost between $17,000 to $25,000.

Both appraisers agree that the real estate market in which 175 Brook Road is located is stable at this time in terms of property values, demand and supply, and growth. In other words, there are houses around the lake entering the market at a rate that is meeting the demand and is resulting in properties holding their value over an extended period of time.

Plaintiff's appraiser has determined the value of 175 Brook Road to be $375,000 based on his review of the property and a sales comparison review with five other properties within the immediate

vicinity of 175 Brook Road.[1]  Each of these comparable properties had been sold in an arm's length transaction within the previous 12 months.  Plaintiff's appraiser's analysis contained several elements of close comparison between the various properties to determine their value in comparison to the conditions and features of 175 Brook Road.  This included or increasing value for differences in size of the lot and house, adjusting for quality, condition, and amenities with one exception, the review provides no credit for properties with heating and air conditioning systems in contrast to 175 Brook Road.  Four of the five comparables sold for between $320,000 and $367,000. The only outlier is the most distant comparable, which sold for $500,000 but also required the greatest net adjustments to compare with 175 Brook Road.  Plaintiff's appraiser does not appear to have credited or discounted any of the comparables to account for the fact that 175 Brook Road has a failed wastewater system.

Defendant's appraiser has determined the value of 175 Brook Road to be $250,000 based on her review of the property and a sales comparison review with four other properties.[2]  All four of the comparable properties had been sold in an arm's length transaction, but one of the three had closed in 2021, nearly two years before the appraisal.  Defendant's appraiser's analysis contained several elements of close comparison between the various properties to determine their value in comparison to the conditions and features of 175 Brook Road.  This included or increasing value for differences in size of the lot and house, adjusting for quality, condition, and amenities, including providing credit and deductions for properties with heating and air conditioning systems in contrast to 175 Brook Road.  Defendant's appraiser's comparables represent both a wider range of prices (ranging from $195,000 to $410,000) and a wider set of locations with two properties located more than 8 miles from 175 Brook Road, one located more than two miles, and one less than two miles.  Out of the four comparables, only one was located on Lake Seymour.

From the evidence, it appears that both appraisers acted within the range and scope of their authority and licenses as appraisers, and that each focused on the qualities and comparisons that they, in their professional judgment, found to be critical in comparing 175 Brook Road with surrounding properties.  In evaluating the two, however, the Court finds that Plaintiff's comparables and

---

[1] 4 out of 5 of Plaintiff's appraiser's comparables were located within 1.54 miles of 175 Brook Road.  The fifth property was located a little over 2 miles.  This fifth property was not only the furthest comparable, but it was the property that had the largest net adjustments to control for variations in quality from 175 Brook Road.

[2] Defendant's Appraiser also issued an October 2023 update to her original April 2023 appraisal and added three other properties.  The update, which was primarily intended to determine if there had been an adjustment to prior appraisal, did not evaluate these three new properties in the same manner as the original appraisal and did not apply any adjustment.

accompanying analysis are more persuasive in establishing the fair market value of the property for the purpose of this partition with two necessary reductions. The reasons that the Court finds Plaintiff's expert's analysis more credible is for a variety of factors. Most importantly, Plaintiff's comparables are drawn entirely from Lake Seymour. While Defendant's expert's comparables are all lakefront or lakeview properties, they involve other lakes that may or may not have the qualities of Lake Seymour, which is a large lake with several shallow areas that lets it warm up at a quicker rate in the summer, than a deeper lake—such as Willoughby—and allows for more recreational activities at different points along the lake. Readily apparent differences like this and other subtle differences persuade the Court that comparables drawn from other lakes in the immediate area are not as likely to yield an accurate estimate of value as properties drawn from the lake and the immediate area when controlling for other factors and qualities.

The Court is also persuaded that Plaintiff's experts' adjustments to the comparables were overall more consistent. By way of example, Defendant's expert reduced the value of one property in her comparison by $73,000 because it had 0.30 of an acre more land than 175 Brook Road, but for subsequent properties she actually added value in the amount of $9,000 and $42,000 for properties that had 0.2 and 0.71 more acres of land. It is not clear from the report why one property saw a decrease from the additional land while the others had an increase. In contrast, Plaintiff's appraisal consistently deducted value attributable to additional land in the comparables.

While both parties agree that the real estate market in the area is stable, the fact that Plaintiff's expert's comparables are more recent gives the Court greater confidence that these numbers reflect more accurately the current market conditions. This is borne out by looking at the overall prices for properties sold on Lake Seymour. Removing the highest and lowest properties, all of the properties on the lake have sold within the past two years for amounts between $320,000 and $370,000. While this comparison is not dispositive, it does give the Court further reason to find Plaintiff's expert's evaluation to be more credible.

While the Court accepts Plaintiff's valuation of $375,000, it does find that this amount must be reduced based on two conditions. First, the Court finds that the valuation must be reduced by $25,000 to account for the failed wastewater system at the property, which is not accounted for in Plaintiff's analysis. Second, the Court finds that the valuation must be reduced by an additional $11,000 to account for the lack of a heating system on the premises, which was not accounted for in Plaintiff's expert's analysis or even in the comparison to the comparables.

# ORDER

Based on the foregoing, the Court finds that the value of 175 Brooks Road, Morgan, Vermont is **$339,000**. Under the terms and conditions of the parties' stipulation and 12 V.S.A. § 5174, the Court enters an award for 1/3 of this value, **$113,000,** to Plaintiff Margie Sisco. Counsel for Plaintiff shall prepare a quit claim deed and property transfer tax return for his client to Defendants Randolph Brent Wheeler, Thomas James Wheeler, and Nancy Wheeler Doyon or a person or entity named by Defendants. This deed and PTTR shall be to the satisfaction of Defendants Counsel, and the payment to Plaintiff Sisco shall occur at a closing where the deed from her to the Defendants or their elected receiver is executed. Parties shall bear their own legal fees, but Defendants shall be responsible for any closing costs, including recording fees.

Parties shall file a confirmation of this closing with the Court, and the Court shall issue a final judgment in this matter consistent with this decision and the parties' stipulation.

Electronically signed on 1/26/2024 2:20 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge